CHIESA SHAHINIAN & GIANTOMASI PC
Melissa A. Salimbene, Esq.
11 Times Square, 34th Floor
New York, New York 10036
msalimbene@csglaw.com
973.530.2092
*Attorneys for Plaintiffs*
*Warner Records Inc.*
*and Green Day, Inc.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WARNER RECORDS INC., and GREEN DAY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN DOES 1-100, JANE DOES 1-100, and XYZ COMPANIES 1-100,<br><br>Defendants. | Case No.: 1:21-cv-4305<br><br>**COMPLAINT** |

Plaintiffs Warner Records Inc. ("Warner Records") and Green Day, Inc. (collectively "Plaintiffs"), by and through their counsel Chiesa Shahinian & Giantomasi PC, complaining of defendants herein, allege as follows:

### NATURE OF THE ACTION

1. This action arises under the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 et seq. (the "Lanham Act") and under New York Civil Rights Law §§ 50-51.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the claims herein pursuant to 28 U.S.C. §§ 1331 and 1338, and through the Court's pendent jurisdiction. Venue is proper under 28 U.S.C. § 1391 because the defendants will be subject to personal jurisdiction in this district.

## **PARTIES**

3. Plaintiff Warner Records Inc. is a corporation duly organized under the laws of the State of Delaware with its principal place of business in California.

4. Plaintiff Green Day, Inc. is a corporation duly organized under the laws of the State of California. Green Day, Inc. has the exclusive trademark rights to the names, likenesses and merchandise of the musical performance group known as GREEN DAY (the "Artists"), including the mark GREEN DAY and logos related thereto.

5. The Artists have used the GREEN DAY name and trademarks since 1988 to identify themselves as a music group in all phases of the entertainment industry and to distinguish the Artists from all other such artists.

6. By license agreement between Warner Records and Green Day, Inc., Warner Records has been granted the exclusive rights to distribute tour merchandise bearing the Artists' names, logos, likenesses, images, artwork and trademarks (collectively, the "Trademarks") on and in connection with various types of artist-related merchandise sold and offered for sale in the vicinity of the Artists' concert performances on their current *Hella Mega* concert tour (the "Tour"). The merchandise that will be offered for sale by Warner Records at the Artists' concerts on the Tour includes, without limitation, T-shirts, sweatshirts, facemasks, hats, stickers, accessories, posters, toys, figurines and other merchandise (collectively, the "Tour Merchandise"). Warner Records is the exclusive holder of rights to sell Tour Merchandise in the vicinity of the Artists' concert performances on the Tour.

7. The identities of defendants, various John Does, Jane Does and XYZ Companies, are not presently known and this Complaint will be amended to include the names of such individuals and entities when identified. Upon information and belief, defendants were present

at concerts on the Artists' previous tours, and defendants were present at the Artists' concerts in Houston, Texas on July 29, 2021, in Jacksonville, Florida on July 31, 2021 and in Miami Beach, Florida on August 1, 2021 on this current Tour.  Upon information and belief, defendants will be present in the Eastern District of New York in connection with the Artists' concert scheduled to be held at Citi Field in Queens, New York on August 4, 2021 (the "New York Show").  The defendants, therefore, will be subject to this Court's jurisdiction.

## FIRST CAUSE OF ACTION
### (Lanham Act)

8. Plaintiffs repeat and reallege each allegation set forth in the above paragraphs as if set forth fully herein.

9. The Artists have used their inherently distinctive names and Trademarks to identify officially authorized goods and services and to distinguish the Artists from other musical performing groups.  The Artists have, among other things, prominently displayed the Trademarks in advertising and promotional materials and on compact disc, audiotape and vinyl packaging and merchandise, including Tour Merchandise.  Plaintiffs and the Artists have realized, and expect to realize, substantial income from the sale of merchandise bearing the Artists' Trademarks (including the Tour Merchandise), and thousands of such items have been sold throughout the United States.

10. As a result of the foregoing, the Artists' Trademarks have developed and now possess secondary and distinctive meaning to purchasers of the Tour Merchandise.

11. The Artists have achieved wide renown during their career in the entertainment and music industry.  The Artists' Trademarks have been used in interstate commerce on and for the purpose of identifying, among other things, Tour Merchandise, including T-shirts and other apparel.

4828-2167-0641

12.     The Artists have a decidedly strong and loyal following among concertgoers, music listeners and music purchasers.  The Artists have appeared, and will appear, in concerts at major arenas and stadiums in the United States and around the world, and have been seen and heard in concert by millions of popular music enthusiasts.

13.     The United States portion of the Tour began with performances in Dallas, Texas on July 24, 2021, Atlanta, Georgia on July 27, 2021, Houston, Texas on July 29, 2021, Jacksonville, Florida on July 31, 2021 and Miami Beach, Florida on August 1, 2021, and will continue with shows at major venues throughout the United States and the world, including the New York Show.  The United States portion of the Tour will conclude no sooner than September 18, 2021.

14.     Warner Records intends to sell Tour Merchandise at or near the site of the Artists' concerts, including at the New York Show.

15.     Upon information and belief, defendants have engaged, and will continue to engage, in the unauthorized manufacture, distribution and sale of inferior merchandise bearing the Artists' Trademarks (the "Bootleg Merchandise") in the vicinity of the Artists' concerts on the Tour.  Plaintiffs believe that the defendant bootleggers and counterfeiters will sell, or attempt to sell, Bootleg Merchandise at all the shows on the Tour, including at the New York Show.

16.     The Bootleg Merchandise is of the same general appearance as the Tour Merchandise and is likely to confuse prospective purchasers as to the source or sponsorship of such Bootleg Merchandise.

17.     The Bootleg Merchandise is generally of inferior quality.  The sale of such merchandise is likely to injure the reputation of the Artists and Plaintiffs, who have developed,

by virtue of the Artists' public performances, the reputation for high quality associated with the Tour Merchandise.

18. The manufacture, distribution and sale of Bootleg Merchandise by defendants, and those acting in concert with defendants, constitutes a false designation of the source of origin of such goods and falsely describes and represents such merchandise, in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

19. The manufacture, distribution and sale of Bootleg Merchandise by defendants, and those acting in concert with defendants, constitutes dilution by tarnishment, in violation of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

20. The aforesaid acts by defendants, and those acting in concert with defendants, are likely to cause confusion or mistake and/or to deceive, and are likely to cause the purchasing public to believe that the sale of such Bootleg Merchandise is authorized, sponsored or approved by the Artists and Plaintiffs, and that such Bootleg Merchandise is subject to the same quality control and regulation required by the Artists and Plaintiffs.

21. The use by defendants and others of the Artists' Trademarks constitutes an attempt to palm off and appropriate to themselves the Artists' and Plaintiffs' exclusive rights therein.

22. Upon information and belief, defendants, and those acting in concert with defendants, have engaged, and will continue to engage, in such unauthorized activities in this State and elsewhere in interstate commerce and, unless enjoined, are likely to continue such activities throughout the Tour, to the great injury of Plaintiffs and the Artists.

23. Plaintiffs have no adequate remedy at law and have suffered, and will continue to suffer, irreparable harm and damage as a result of defendants' aforesaid acts, which, if not enjoined, will cause injury and monetary loss in an amount presently incalculable.

## SECOND CAUSE OF ACTION
### (Unfair Competition)

24. Plaintiffs repeat and reallege each allegation set forth in the above paragraphs as if set forth fully herein.

25. Upon information and belief, the aforesaid acts by defendants and others have been, and will continue to be, committed with full knowledge of the rights of Plaintiffs and the Artists, and have the effect of misleading and confusing the public and misappropriating and trading upon the property rights, goodwill and reputation inhering to the name and likeness of the Artists.

26. Such misappropriation and unfair competition will interfere with Plaintiffs' rights and ability to exploit the commercial value of the Artists' Trademarks.

27. Plaintiffs have no adequate remedy at law and have suffered, and will continue to suffer, irreparable harm and damages as a result of defendants' aforesaid acts, which, if not enjoined, will cause injury and monetary loss in an amount presently incalculable.

## THIRD CAUSE OF ACTION
### (Right of Publicity)

28. Plaintiffs repeat and reallege each allegation set forth in the above paragraphs as if set forth fully herein.

29. By virtue of the expenditures of time, effort and talent by the Artists and Plaintiffs in advertising, publicizing and promoting the accomplishments of the Artists and through

4828-2167-0641

extensive commercial exploitation of the Artists' public personas, the Artists and Plaintiffs have created rights of publicity in the Artists' names and likenesses.

30. By virtue of an assignment from the Artists, Warner Records is the owner of the Artists' rights of publicity in their names and likenesses, individually and collectively.

31. The common law right of publicity is subsumed under New York's statutory right of privacy (*see* New York Civil Rights Law §§ 50-51).

32. The defendants have used, and will continue to use, the Artists' names and/or likenesses without authorization and for purposes of trade and for other commercial purposes.

33. The aforesaid uses of the names, likenesses and Trademarks by defendants constitute infringements of such rights of publicity.

34. The defendants' activities violate Sections 50 and 51 of the New York Civil Rights Law.

35. Plaintiffs have no adequate remedy at law and have suffered, and will continue to suffer, irreparable harm and damage as a result of defendants' aforesaid acts, which, if not enjoined, will cause injury and monetary loss in an amount presently incalculable.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs seek relief as follows:**

36. That defendants, their agents, servants, employees, officers, attorneys, successors, and assigns, and all persons acting in concert with defendants, or on their behalf, be enjoined, in this and all other judicial districts in the United States, preliminarily during the course of this litigation and permanently, from:

(a) Manufacturing, distributing, selling, offering for sale, holding for sale or advertising any products bearing the Trademarks or any colorable variation thereof, including, but not limited to, the names or likenesses of the Artists; and

(b) Representing that any article of merchandise manufactured, distributed, sold, held for sale or advertised by defendants is sponsored or authorized by Plaintiffs in this district or in any other district in which Plaintiffs seek to enforce this Court's injunction order.

37. That this Court authorize the United States Marshal, the local and state police, authorized agents of Plaintiffs, and/or any persons acting under their supervision, to seize and impound any and all Bootleg Merchandise which the defendants may attempt to sell, distribute or hold for sale at, within, or in the vicinity of the arenas at which the Artists are performing, before, during or after said concerts.

38. That defendants deliver up for destruction all Bootleg Merchandise bearing the Trademarks, including, but not limited to, the names or likenesses of the Artists.

39. That defendants pay to Plaintiffs damages in an amount to be determined based upon Plaintiffs' loss of income from defendants' unauthorized activities.

40. That defendants pay to Plaintiffs treble damages, costs and attorneys' fees pursuant to 15 U.S.C. § 1117.

41. That Plaintiffs have such other and further relief as the Court deems to be reasonable, necessary and just.

|  |  |
|---|---|
|  | CHIESA SHAHINIAN & GIANTOMASI PC<br>*Attorneys for Plaintiffs*<br>*Warner Records Inc.*<br>*and Green Day, Inc.* |
|  | By:    <u>*/s/ Melissa A. Salimbene*</u><br>      MELISSA A. SALIMBENE<br>      11 Times Square, 34th Floor<br>      New York, New York 10036<br>      msalimbene@csglaw.com<br>      973.530.2092 |
| Dated: August 2, 2021<br>       New York, New York |  |

4828-2167-0641